12 CIV 4028

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CLARENCE ARSENAULT, Individually and
On Behalf of All Others Similarly Situated,

       Plaintiff,

    v.

STEVEN R. BERRARD, MICHAEL J. KIPP,
DAVID BRALEY, JOHN ELLIS BUSH,
HARRIS W. HUDSON, H. WAYNE
HUIZENGA, WILLIAM M. PRUITT, DAVID
PRUSSKY, and MICHAEL SERRUYA

       Defendants.

and

SWISHER HYGIENE, INC.,

       Nominal Defendant.

Civil Action No.



**VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT**

JURY TRIAL DEMAND

Plaintiff Clarence Arsenault, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Swisher Hygiene, Inc. ("Swisher" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Swisher; and (c) review of other publicly available information concerning Swisher.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(2), because plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs. This action is not a collusive action designed to confer jurisdiction on a Court of the United States that it would not otherwise have.

2.      This Court has jurisdiction over each defendant because each defendant is either a corporation that conducts business in, and maintains operations in, this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

3.      Venue is proper in this Court under 28 U.S.C. §1391(a) because (1) one or more of defendants reside in, or maintain executive offices in, this district; (2) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts described herein, occurred within this District; and (3) defendants have received substantial compensation in this District by conducting business herein and by engaging

in numerous activities that have an impact in this District.

**PARTIES**

4.     Plaintiff Clarence Arsenault purchased shares of Swisher stock during the Class Period, as detailed in the certification attached hereto, and was damaged thereby.  Plaintiff is a citizen and resident of the State of Connecticut.

5.     Defendant Swisher is a Delaware corporation with its principal executive offices located at 4725 Piedmont Row Drive, Suite 400, Charlotte, North Carolina 28210.

6.     Defendant Steven R. Berrard ("Berrard") was, at all relevant times, President, Chief Executive Officer ("CEO") and a director of Swisher. This Defendant may be personally served with process and citation at his primary place of abode at 1693 Wellford Street, Mount Pleasant, South Carolina 29464-5707. This Defendant has been, at all relevant times, a member of the Board of Directors of the Company.

7.     Defendant Michael J. Kipp ("Kipp") was, at all relevant times, Senior Vice President and Chief Financial Officer ("CFO") of Swisher. This Defendant may be personally served with process and citation at his primary place of abode at 171 Whitewater Circle, Williston, VT 05495-7516.

8.     On information and belief, Defendant David Braley is a citizen of Canada.  This Defendant may be personally served with process and citation at his primary place of business at 4725 Piedmont Row Drive, Suite 400, Charlotte, North Carolina 28210.  This Defendant has been, at all relevant times, a member of the Board of Directors of the Company.

9.     Defendant John Ellis (Jeb) Bush is a citizen and resident of the State of Florida. This Defendant may be personally served with process and citation at his primary place of abode at 651 Almeria Ave., Coral Gables, Florida 33134-5602. This Defendant has been, at all

relevant times, a member of the Board of Directors of the Company.

10. Harris W. Hudson is a citizen and resident of the State of Florida. This Defendant may be personally served with process and citation at his primary place of abode at 1535 SE 17th Street, Suite 107, Fort Lauderdale, Florida 33316-1737. This Defendant has been, at all relevant times, a member of the Board of Directors of the Company.

11. H. Wayne Huizenga is a citizen and resident of the State of Florida. This Defendant may be personally served with process and citation at his primary place of abode at 1575 Ponce De Leon Drive, Fort Lauderdale Florida 33316-1323. This Defendant has been, at all relevant times, the Chairman of the Board of Directors of the Company.

12. William D. Pruitt is a citizen and resident of the State of Florida. This Defendant may be personally served with process and citation at his primary place of abode at 274 Veleros Ct. Apt. 21st, Coral Gables, Florida 33143-6528. This Defendant has been, at all relevant times, a member of the Board of Directors of the Company.

13. On information and belief, Defendant David Prussky is a citizen and resident of Canada. This Defendant may be personally served with process and citation at his primary place of business at 4725 Piedmont Row Drive, Suite 400, Charlotte, North Carolina 28210. This Defendant has been, at all relevant times, a member of the Board of Directors of the Company.

14. The individuals named as defendants in ¶¶ 4-13 are sometimes referred to herein as the "Individual Defendants." The defendants named above are collectively referred to as "Individual Defendants." Because of the Individual Defendants' positions with the Company, they had access to key adverse but undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business

prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and through reports and other information provided to them in connection therewith.

15. It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above board members of Swisher, by virtue of his or her high-level position with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition as these defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

16. As officers and controlling persons of a publicly-held company whose common stock has been, at all relevant times, registered with the U.S. Securities and Exchange Commission ("SEC") under the Exchange Act which is traded on the NASDAQ Stock Exchange, and is governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to promptly disseminate accurate and truthful information with

respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions violated these specific requirements and obligations.

17. The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Swisher, each of the Individual Defendants had access to the adverse undisclosed information about Swisher's business prospects and financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Swisher and its business issued or adopted by the Company materially false and misleading.

18. The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Further, each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of

the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

19.     Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit by disseminating materially false and misleading statements and/or concealing material adverse facts, which has severely damaged Swisher and its shareholders by extension.

## SUBSTANTIVE ALLEGATIONS

20.     Swisher provides hygiene and sanitation solutions in North America and internationally.

21.     On March 28, 2012, Swisher disclosed that its previously issued financial results for the first, second and third quarter of 2011 should no longer be relied upon and may have to be restated. The Company informed investors the Company's Audit Committee was conducting an ongoing internal review relating to possible adjustments to (1) the accounting for business acquisitions and (2) the calculation of the allowance of doubtful accounts receivable. According to the Company, the Audit Committee initiated its review after an informal inquiry by the Company regarding a former employee's concerns with certain of the Company's accounting policies. Swisher indicated that the Company first initiated the informal inquiry by requesting that both the Audit Committee and the Company's independent auditor look into the matters raised by the former employee and that the Company's Audit Committee determined that an independent review of the matters presented by the former employee should be conducted. During the course of its independent review, and due in part to the significant number of acquisitions made by the Company, the Audit Committee determined it would be in the best interest of the Company and its stockholders to review the accounting entries relating to each of

the 63 acquisitions made by the Company during the year ended December 31, 2011. Swisher further disclosed that its Audit Committee believes that material adjustments to its previously issued financial results - a result of a correction in the calculation in allowance for doubtful accounts combined with potential changes to the Company's purchase accounting policies and interpretations of applicable accounting literature - may materially increase its reported net loss before income taxes for the first, second and third quarters of 2011.

22.     On this news, shares of Swisher declined $0.29 per share, 9.51 %, to close on March 28, 2012, at $2.76 per share, on unusually heavy volume, and further declined $0.33 per share, or 11.96%, to close on March 29, 2012, at $2.43 per share, also on usually heavy volume.

23.     Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company was improperly accounting for business acquisitions; (2) that the Company was improperly calculating its allowance for doubtful accounts receivable; (3) that, as a result, the Company's income was overstated; (3) that, as such, the Company's financial results were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); (4) that the Company lacked adequate internal and financial controls; and (5) that, as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

24.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other shareholders have suffered significant losses and damages.

## Defendants' False and Misleading Statements

25.    On May 16, 2011, the Company issued a press release entitled, "Swisher Hygiene Annouces Results for the Three-Month Period Ended March 31, 2011." Therein, the Company, in relevant part, stated:

First Quarter 2011 Highlights and Subsequent Events

•    Total revenue for the three months ended March 31, 2011 increased by 86% to $27.4 million compared to $14.7 million for the same period in 2010, led by an 89% increase in products revenue and a 139% increase in services revenue. Total revenue for the first quarter 2011 was up 55% sequentially from the fourth quarter of 2010. Excluding the impact of acquisitions, total revenue increased 15% from the same period of the prior year.

•    Announced its outlook at annual meeting of $200 million in revenue for full year 20 II, with current annualized Run-Rate Revenue in excess of $230 million.

•    Raised over $195 million of equity in private placements with well-known and respected U.S. and Canadian institutions, and entered into a senior secured revolving credit facility with Wells Fargo Bank, N.A. providing up to $100 million of borrowing capacity. As of April 30, 2011, Swisher Hygiene had over $165 million in cash on its balance sheet.

•    Completed nine acquisitions of hygiene and chemical companies and four acquisitions of franchises in the first quarter of 2011.

•    In March 2011, acquired Choice Environmental Services, Inc., a Florida-based residential and commercial solid waste services company.

•    In May 2011, acquired ProClean of Arizona, Inc. and Mt. Hood Solutions, the leading independent chemical providers in the Southwest U.S. and Northwest U.S., respectively.

•    Commenced trading on the NASDAQ Global Market.

\* \* \*

First Quarter 2011 Results

For the three months ended March 31, 2011, Swisher Hygiene reported total revenue of $27.4 million, an 86% increase from $14.7 million in the same prior-

8

year period and a 55% sequential increase from the fourth quarter of 2010. The increase was primarily due to an 89% increase in products revenue due to the acquisitions made since August 2010 of eight franchisees and 15 independent hygiene and chemical companies, as well as a 139% increase in service revenue, largely attributable to the acquisition of Choice Environmental Services, Inc. Excluding the impact of acquisitions, total revenue increased 15% from the prior-year period

26.     On May 16, 2011, Swisher filed its Quarterly Report on Form 10-Q with the SEC for the 2011 fiscal first quarter. The Company's Form 10-Q was signed by Defendants Berrard and Kipp, and reaffirmed the Company's financial results announced that same day. The Company's Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Berrard and Kipp, who certified:

1.     I have reviewed this quarterly report on Form 10-Q of Swisher Hygiene Inc.:

2.     Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.     Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods present in this report;

4.     The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13-a-15( f) and 15d-15(f)) for the registrant and have:

a)     Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b)      Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principals;

c)      Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d)      Disclosed in this report any change in the registrant's internal control over financing reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.      The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a)      All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b)      Any fraud, whether or not material, that involved management or other employees who have a significant role in the registrant's internal control over financial reporting.

27.     On August 15, 2011, the Company issued a press release entitled, "Swisher Hygiene Announces Results for the Three and Six-Month Periods Ended June 30, 2011." Therein, the Company, in relevant part, stated:

Second Quarter 2011 Highlights and Subsequent Events

•       Total revenue for the three months ended June 30, 2011 increased by 241% to $51.7 million compared to $15.2 million for the same period in 2010, led by a 227% increase in product revenue and a 406% increase in service revenue. Excluding the impact of acquisitions, organic revenue for the quarter increased 22% from the same period in 2010.

- Total revenue for the second quarter 2011 was up 89% sequentially from the first quarter of 2011, and up 192% from the fourth quarter of 2010.

- Adjusted EBITDA was $3.0 million in the second quarter of 2011 versus an Adjusted EBITDA loss of $0.3 million for the prior-year period and compared to an Adjusted EBITDA loss of $1.0 million for the first quarter of 2011.

- Adjusted EBITDA margins in the second quarter of 2011 were 5.8%, compared to Adjusted EBITDA margins of -3.5% in the first quarter of 2011, -17.1% in the fourth quarter of 2010 and -2.2% in the prior-year period.

- Raised revenue outlook for full year 2011 to $220 million, with annualized Run-Rate Revenue now in excess of $280 million.

- Closed on $76 million of additional equity capital in a private placement - the final tranche of a total of $191 million of equity raised in private placements, net of issuance costs, during the first half of 2011. As of June 30, 2011, Swisher Hygiene had over $112 million in cash on its balance sheet.

- Since March 31, 2011, Swisher Hygiene has completed 27 acquisitions, including 23 chemical, linen and waste companies and four franchises.

- In July 2011, acquired Sanolite Corporation, the leading independent hygiene and chemical provider in the Northeast. Along with the previous acquisitions of ProClean of Arizona, Inc. and Mt. Hood Solutions, the transaction completed Swisher Hygiene's transition to a regional operating structure.

- In July 2011, in connection with the implementation of the regional operating structure, initiated approximately $5 million in cost and expense reductions that will be fully implemented in the third quarter, as well as regional chemical manufacturing initiatives that are expected to generate a

200 basis point sequential reduction in chemical cost of sales over the next four quarters.

- In August 2011, completed equipment and other financing agreements that will provide Swisher Hygiene with up to $62.5 million of additional available capital.

* * *

Second Quarter 2011 Results

For the three months ended June 30, 2011, Swisher Hygiene reported total revenue of $51.7 million, a 241% increase from $15.2 million in the prior-year

period and an 89% sequential increase from the first quarter of 2011. The increase was due to a 227% increase in product revenue, primarily due to the acquisitions made since August 2010 of 12 franchisees and 38 independent chemical, linen and waste companies, as well as a 406% increase in service revenue, largely attributable to the March 2011 acquisition of Choice Environmental Services, Inc. as well as increased chemical revenue. Excluding the impact of acquisitions, organic revenue increased 22% from the same period of the prior year.

28.     On August 15, 2011, Swisher filed its Quarterly Report on Form 10-Q with the SEC for the 2011 fiscal second quarter. The Company's Form 10-Q was signed by Defendants Berrard and Kipp, and reaffirmed the Company's financial results announced that same day. The Company's Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Berrard and Kipp, substantially similar to the certifications contained in 26, supra.

29.     On November 14, 2011, the Company issued a press release entitled, "Swisher Hygiene Announces Results for the Three and Nine-Month Periods Ended September 30, 2011." Therein, the Company, in relevant part, stated:

Third Quarter 2011 Highlights

•     Total revenue for the three months ended September 30, 2011 increased by 318% to $67.2 million compared to $16.1 million for the same period in 2010, led by a 353% increase in product revenue and a 438% increase in service revenue.

•     Organic revenue growth for the quarter was 29% as compared with the same period in 2010.

•     Total revenue for the third quarter 2011 was up 30% sequentially from the second quarter of 2011, and up 280% from the fourth quarter of 2010.

•     Adjusted EBITDA for the third quarter 2011 was $5.3 million versus an Adjusted EBITDA loss of $1.1 million for the prior-year period and compared to Adjusted EBITDA of $3.0 million for the second quarter of 2011.

•     Adjusted EBITDA margin in the third quarter of 2011 was 7.8%, compared to Adjusted EBITDA margins of 5.8% in the second quarter of 2011, -3.5% in the first quarter of 2011 and -6.7% in the third quarter of 2010.

• Revenue outlook for full year 20 11 is expected to exceed $220 million, with annualized Run-Rate Revenue now in excess of $320 million.

• Since June 30, 2011, completed 28 acquisitions, including 26 chemical, linen and dust control companies and two franchises.

• Completed acquisition of Sanolite, the leading independent hygiene and chemical provider in the Northeast which enabled Swisher Hygiene to complete its regional operating structure while significantly strengthening its chemical sales and service capabilities in the region.

• Acquired Daley International, one of the largest independent chemical manufacturers in the U.S. The acquisition will allow Swisher Hygiene to significantly increase its internal product manufacturing capability, while also enabling Swisher Hygiene to provide a broader array of products for its existing customers and those in additional vertical markets.

• In August 2011 , completed equipment and other financing agreements that will provide Swisher Hygiene with up to $62.5 million of additional available capital.

\* \* \*

Third Quarter 2011 Results

For the three months ended September 30, 2011 , Swisher Hygiene reported total revenue of $67.2 million, a 318% increase from $16.1 million in the prior-year period and a 30% sequential increase from the second quarter of 2011. Product revenue increased 353% primarily due to the acquisitions of chemical, linen and waste companies since the end of the third quarter of 2010, and service revenue increased 438%, largely attributable to the March 2011 acquisition of Choice Environmental Services, Inc. Excluding the impact of acquisitions, organic revenue increased 29% from the same period of the prior year.

30.     On November 14, 2011, Swisher filed its Quarterly Report on Form 10-Q with the SEC for the 2011 fiscal third quarter. The Company's Form 10-Q was signed by Defendants Berrard and Kipp, and reaffirmed the Company's financial results announced that same day. The Company's Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Berrard and Kipp, substantially similar to the certifications contained in ¶ 26, supra.

31.    The statements contained in ¶¶ 25-30, were materially false and/or misleading when made because defendants failed to disclose or indicate the following: (1) that the Company was improperly accounting for business acquisitions; (2) that the Company was improperly calculating its allowance for doubtful accounts receivable; (3) that, as a result, the Company's income was overstated; (3) that, as such, the Company's financial results were not prepared in accordance with GAAP; (4) that the Company lacked adequate internal and financial controls; and (5) that, as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

## DISCLOSURES AT THE END OF THE CLASS PERIOD

32.    On March 28, 2012, the Company issued a press release entitled, "Swisher Hygiene Announces it Will File Form 128-25 for Extension to File Its 2011 Annual Report on Form IO-K: Delay in Filing Related to Possible Restatements of First, Second and Third Quarter 2011 Results." Therein, the Company, in relevant part, stated:

> Swisher Hygiene Inc. ("Swisher Hygiene") (Nasdaq:SWSH) (TSX:SWI), a leading provider of essential hygiene and sanitation products and services, today announced that it will file a Form I2b-25, Notification of Late Filing, with the Securities and Exchange Commission with respect to its Form 1 0-K, which allows the Company an additional 15 calendar days to file the Form I 0-K which is otherwise due on March 30, 2012.

> The delay in filing is due to an ongoing internal review by Swisher Hygiene's Audit Committee primarily relating to possible adjustments to (1) the accounting for business acquisitions and (2) the calculation of the allowance of doubtful accounts receivable. On March 21, 2012, the Board of Directors of Swisher Hygiene concluded that the Company's previously issued interim financial statements for the quarterly periods ended June 30, 2011 and September 30, 2011, and the other financial information in the Company's quarterly reports on Form

> 10-Q for the periods then ended, should no longer be relied upon. Subsequently,

> on March 27, 2012, the Audit Committee concluded that the Company's previously issued interim financial statements for the quarterly period ended

March 31, 2011 should no longer be relied upon. The Company refers to the interim financial statements and the other financial information described above as the "Prior Financial Information."

As of today's date, the Audit Committee's review is not complete. Nevertheless, the Audit Committee believes material adjustments to the Prior Financial Information may be required and the Company may need to file restatements of its first, second and third quarter financial statements. While the amount of any such adjustments cannot be estimated with reasonable certainty at this time, to date, the Audit Committee has preliminarily identified an aggregate of approximately $3.6 million in increases to net loss before income taxes for the affected periods.

The Company is working with its Audit Committee, the Audit Committee's outside experts and the Company's independent auditor to determine the full impact of these potential adjustments on the Prior Financial Information. However, until the review is complete and a final determination is made, the Company cannot provide further assurance regarding the complete impact of any adjustments on its results of operations for the affected periods, and the Company cannot provide assurance that the adjustments identified to date are representative of the adjustments that will be required when the review is complete. Furthermore, the Company cannot assure that the review will not identify further adjustments that may be required.

"We want our shareholders to know that providing confidence and transparency in our financial statements is of paramount importance, and we are doing everything possible to ensure that this is a one-time only event," said Steven R. Berrard, Chief Executive Officer of Swisher Hygiene.

"We further want to note that the adjustments that are being discussed are non-cash in nature and we strongly believe that they will not diminish our financial position or strong capital structure," continued Mr. Berrard. "We have significant liquidity and financial flexibility, and we are still executing our plan to take advantage of the abundant opportunities our business model provides to make quality acquisitions and cross-sell to existing customers. Further, this announcement does not affect our view for 2012, as we still expect to see quarter-over-quarter revenue growth, double-digit organic revenue growth and double-digit growth in adjusted EBITDA."

The Company plans to complete its internal review and file its Annual Report on Form 1 0-K for the year ended December 31, 2011 as promptly as possible; however, the Company cannot provide assurance that it will be able to file its

Form 1 0-K within the time period prescribed by Rule 12b-25. In addition, the Company announced that it will host a conference call to discuss the matters described above. The conference call will be held on Wednesday, March 28, 2012, at 9:00 AM Eastern Time. The conference call can be accessed over the phone by dialing 877-870-9226 or for international callers by dialing 1-973-890-8320; please dial-in 10 minutes before the start of the call. In order to access the webcast, please go to the Investors section of Swisher Hygiene's website at http://www.swisherhygiene.com and click on the webcast link that will be made available.

33.     On March 28, 2012, Swisher filed a Current Report with the SEC on Form 8-K. Therein, the Company, in relevant part, stated:

34.     On this news, shares of Swisher declined $0.29 per share, 9.51%, to close on March 28, 2012, at $2.76 per share, on unusually heavy volume, and further declined $0.33 per share, or 11.96%, to close on March 29, 2012, at $2.43 per share, also on usually heavy volume.

Item 4.02(a) Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review

On March 21, 2012, the Board of Directors of Swisher Hygiene Inc. (the "Company") concluded that the Company's previously issued interim financial statements for the quarterly periods ended June 30, 2011 and September 30, 2011, and the other financial information in the Company's quarterly reports on Form

10-Q for the periods then ended should no longer be relied upon. The Board reached this conclusion following discussion of an ongoing internal review by the Company's Audit Committee primarily relating to possible adjustments to (1) the accounting for business acquisitions and (2) the calculation of the allowance for doubtful accounts receivable. Subsequently, on March 27, 2012, the Audit Committee concluded that the Company's previously issued interim financial statements for the quarterly period ended March 31, 2011 should no longer be relied upon. The Audit Committee made this determination in connection with its ongoing review. We refer to the interim financial statements and the other financial information described above as the "Prior Financial Information."

As of the date of this filing, the Audit Committee's review is not complete. Nevertheless, the Audit Committee believes that material adjustments to the Prior Financial Information may be required and that the Company may need to restate its first, second and third quarter financial results for 2011.

The Audit Committee believes that non-cash adjustments made as a result of a correction in the calculation in allowance for doubtful accounts combined with potential changes to the Company's purchase accounting policies and interpretations of applicable accounting literature may materially increase reported net loss before income taxes for the first, second and third quarters of 20II. While the amount of any such adjustments cannot be estimated with reasonable certainty at this time, to date, the Audit Committee has preliminarily identified an aggregate of approximately $3.6 million in increases to net loss before income taxes for the affected periods. The Company is working with its Audit Committee, the Audit Committee's outside experts, and the Company's independent auditor to determine the full impact of these potential adjustments on the Prior Financial Information. However, until the review is complete and a final determination is made, the Company cannot provide you with further assurance regarding the complete impact of any adjustments on its results of operations for the affected periods, and the Company cannot assure you that the adjustments identified to date are representative of the adjustments that will be required when the review is complete. Furthermore, the Company cannot assure you that the review will not identify further adjustments that may be required.

The Audit Committee initiated its review after an informal inquiry by the Company regarding a former employee's concerns with certain of the Company's accounting policies. The Company first initiated the informal inquiry by requesting that both the Audit Committee and the Company's independent auditor look into the matters raised by the former employee. Following this informal inquiry, the Company's senior management and its independent auditor advised the Chairman of the Company's Audit Committee regarding the matters. Subsequently, the Audit Committee determined that an independent review of the matters presented by the former employee should be conducted. During the course of its independent review, and due in part to the significant number of acquisitions made by the Company, the Audit Committee determined it would be in the best interest of the Company and its stockholders to review the accounting entries relating to each of the 63 acquisitions made by the Company during the year ended December 3I, 2011.

In connection with the Audit Committee's independent review, the Company is evaluating its internal control over financial reporting, and particularly controls relating to the estimated allowance for doubtful accounts calculation and controls relating to accounting for business acquisitions, to determine if any significant deficiencies or material weaknesses in such controls caused or contributed to any potential adjustments that may be required.

The Company's Audit Committee and Board of Directors have discussed the matters disclosed in this filing with the Company's independent auditors.

The Company plans to complete its internal review and file its Annual Report on Form 10-K for the year ended December 31, 2011 as promptly as possible.

Although the Company will seek to extend the time required to file its Form 1 0-K in accordance with Rule 12b-25 under the Securities Exchange Act of 1934, as amended, there can be no assurance that the Company will be able to file its Form 10-K within the time period prescribed by Rule 12b-25.

## SWISHER'S VIOLATION OF GAAP RULES IN ITS FINANCIAL STATEMENTS FILED WITH THE SEC

35.     These financial statements and the statements about the Company's financial results were false and misleading, as such financial information was not prepared in conformity with GAAP, nor was the financial information a fair presentation of the Company's operations due to the Company's improper accounting for, and disclosure about its acquisitions, in violation of GAAP rules.

36.     GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time. Regulation S-X (17 C.F.R. § 210.4 01 (a) (1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate. Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements. 17 C.F.R. § 210.10-0l(a).

37.     The fact that Swisher announced that it expects to restate its financial statements, and informed investors that these financial statements should not be relied upon is an admission

that they were false and misleading when originally issued (APB No. 20, 7-13; SFAS No. 154, 25).

38.     Given these accounting irregularities, the Company announced financial results that were in violation of GAAP and the following principles:

(a)     The principle that "interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements" was violated (APB No. 28, I 0);

(b)     The principle that "financial reporting should provide information that is useful to present to potential investors and creditors and other users in making rational investment, credit, and similar decisions" was violated (FASB Statement of Concepts No. I, 34);

(c)     The principle that "financial reporting should provide information about the economic resources of an Swisher, the claims to those resources, and effects of transactions, events, and circumstances that change resources and claims to those resources" was violated (FASB Statement of Concepts No. I, 40);

(d)     The principle that "financial reporting should provide information about an Swisher's financial performance during a period" was violated (FASB Statement of Concepts No. 1, 42);

(e)     The principle that "financial reporting should provide information about how management of an Swisher has discharged its stewardship responsibility to owners (stockholders) for the use of Swisher resources entrusted to it" was violated (FASB Statement of Concepts No. 1, 50);

(f)     The principle that "financial reporting should be reliable m that it represents what it purports to represent" was violated (FASB Statement of Concepts No. 2, 58-59);

(g)     The principle that "completeness, meaning that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions" was violated (FASB Statement of Concepts No. 2, 79); and

(h)     The principle that "conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered" was violated (FASB Statement of Concepts No. 2, 95).

39. The adverse information concealed by Defendants during the Class Period and detailed above was in violation of Item 303 of Regulation S-K under the federal securities law (17 C.F.R. §229.303).

## DEFENDANTS' DUTIES

40. By reason of their positions as officers, directors, and fiduciaries of the Company and because of their ability to control the business and corporate affairs of the Company, Defendants owed the Company and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

41. Defendants, because of their positions of control and authority as directors and officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with the Company, each of the Defendants had knowledge of material non-public information regarding the Company.

42. To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of the Company were required to, among other things:

a) exercise good faith to ensure the Company's affairs were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

b) exercise good faith to ensure the Company operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority; and

c) when put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

## DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

43. Plaintiff brings this action derivatively in the right and for the benefit of Swisher to redress injuries suffered, and to be suffered, by Swisher as a direct result of the breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants. Swisher is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction in this Court that it would not otherwise have.

44. Plaintiff will adequately and fairly represent the interests of Swisher in enforcing and prosecuting its rights.

45. Plaintiff is the owner of Swisher common stock and was the owner of Swisher common stock at all times relevant to the Individual Defendants' wrongful course of conduct alleged herein.

46. At the time that this action was commenced, the Swisher Board was comprised of Steven R. Berrard, David Braley, John Ellis Bush, Harris W. Hudson, H. Wayne Huizenga, William M. Pruitt, David Prussky, and Michael Serruya. As a result of the facts set forth herein, Plaintiff has not made any demand on the Swisher Board to institute this action against the

Individual Defendants. Such demand would be a futile and useless act with respect to each and every one of the Individual Defendants because they are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action for the following reasons:

(a)     Defendants face a substantial likelihood of being held liable for breaching their fiduciary duties of loyalty and good faith as alleged herein, and are therefore incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action;

(b)     Swisher's non-employee directors have received, and continue to receive, substantial compensation in the form of cash and stock option awards. These defendants are also interested in maintaining their positions on the Board so as to safeguard their substantial compensation and stock options. The following charts illustrate the substantial compensation that these directors have received, which demonstrates that demand upon such individuals would be futile:

| Name | Fees Earned or Paid in Cash | Stock Awards(1) | Option Awards | Non-Equity Incentive Plan Compensation | Change in Pension Value and Nonqualified Deferred Compensation Earnings | All Other Compensation | Total |
|---|---|---|---|---|---|---|---|
| H. Wayne Huizenga | $13,000 | $56,915 | — | — | — | — | $69,915 |
| David Braley | $16,000 | $58,416 | — | — | — | — | $74,416 |
| John Ellis Bush | $17,500 | $60,083 | — | — | — | — | $77,583 |
| James E. O'Connor(2) | $16,000 | $60,083 | — | — | — | — | $76,083 |
| David Prussky | $16,000 | $58,416 | — | — | — | — | $74,416 |
| Ramon A. Rodriguez(2) | $17,500 | $61,584 | — | — | — | — | $79,084 |
| Michael Serruya | $13,000 | $56,915 | — | — | — | — | $69,915 |

| Name | Restricted Stock Units | Stock Options |
|---|---|---|
| H. Wayne Huizenga | 13,616 | — |
| David Braley | 13,975 | — |
| John Ellis Bush | 14,374 | — |
| James E. O'Connor(2) | 14,374 | — |
| David Prussky | 13,975 | 20,000 |
| Ramon A. Rodriguez(2) | 14,733 | — |
| Michael Serruya | 13,616 | — |

(2)  Messrs. O'Connor and Rodriguez resigned as directors on January 28, 2011.

(c)     The entire Swisher Board and senior management participated in the wrongs complained of herein. For the reasons described herein, Swisher's directors are not disinterested

or independent. Pursuant to their specific duties as Board members, each was charged with the management of the Company and the conduct of its business affairs. Each of the above referenced defendants breached the fiduciary duties they owed to Swisher and its shareholders in that they failed to prevent and correct the dissemination of the Company false and misleading statements. Thus, the Swisher Board cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because its members are interested personally in the outcome because their actions have subjected Swisher to millions of dollars in potential liability for violations of applicable securities laws;

(d)     Defendants Berrard and Kipp certified certain of Swisher's SEC filings. Accordingly, demand is futile as he faces a substantial likelihood of liability for breach of fiduciary duties owed to Swisher;

(e)     Defendants Berrard and Kipp were aware of the Company's ongoing unlawful and improper business practices and the dissemination of materially false and misleading statements.

(f)     Defendants Bailey, Pruitt and Prussky served on Swisher's Audit Committee during the Relevant Period. Defendant Haroian was the chairman of Swisher's Audit Committee during the Relevant Period. The stated purpose of Swisher's Audit Committee was to assist the Board's oversight of the Company's accounting and financial reporting processes and the audits of the Company's financial statements. Specifically, the Audit Committee was to assist the Board in: (1) identifying and recommending to the Board individuals qualified to become members of our Board and to fill vacant Board positions; (2) recommending to the Board the director nominees for the next annual meeting of shareholders; (3) recommending to the Board director committee assignments; (4) recommending to the Board the compensation for Company

directors; (5) reviewing and evaluating succession planning for our Chief Executive Officer and other executive officers; (6) monitoring the continuing education program for our directors; and (7) evaluating annually the Nominations and Corporate Governance Committee charter. The Audit Committee, moreover, is responsible for oversight of the Company's financial reporting process, including the effectiveness of the Company's internal accounting and financial controls and procedures, and controls over the accounting, auditing, and financial reporting practices. Additionally, the Audit Committee met privately, outside the presence of Swisher's management, with the Company's independent registered public accounting firm to discuss, among other matters, all communications required by standards of the Public Company Accounting Oversight Board, including the matters required to be discussed by PCAOB AU 380, *Communication with Audit Committees*, and Rule 2-07, *Communication with Audit Committees*, of Regulation S-X. As part of its oversight role with respect to the Company's financial statements and the public disclosure of the Company's financial results, moreover, the Company's Audit Committee regularly reviewed and discussed with Swisher's management the financial statements included in the Company's annual reports on Form 10-K and quarterly reports on Form 10-Q, its quarterly earnings releases, and the financial guidance that the Company provided to analysts, ratings agencies, and the public. The Audit Committee also met regularly in separate executive sessions with Swisher's CFO, Chief Accounting Officer, and other members of the Company's executive management team. As a result, Defendants Bailey, Pruitt and Prussky knew, or should have known, of the Company's wrongdoing alleged herein, but intentionally or recklessly violated their duties as members of the Audit Committee. Specifically, because of these duties and responsibilities – particularly the Audit Committee's responsibility to discuss the Company's financial information and earnings guidance with

Swisher's management prior to release – members of the Audit Committee were aware that Swisher's positive statements about the Company's prospects and growth were made without a reasonable basis. Indeed, through such discussions with Swisher's management, the Audit Committee was aware or should have been aware of the significant deficiency in the subject accounting methodologies, the substantial failures therein, and the detrimental misrepresentations about same. Further, the Audit Committee was aware or should have been aware that these processes lacked effective supervision and oversight and the Company's operating efficiencies had been hindered. As such, Defendants breached their fiduciary duties of loyalty and good faith to the Company. Additionally, the failure of the Individual Defendants to perform their duties as members of the Audit Committee with loyalty and in good faith raises a substantial likelihood of non-exculpated personal liability on their part. As a result, the Individual Defendants cannot impartially consider a demand on the Board to commence litigation against themselves;

(g)     Each of the key officers and directors knew of and/or directly benefited from the wrongdoing complained of herein thereby rendering demand futile;

(h)     The Individual Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties;

(i)     In order to bring this suit, all of Swisher's directors would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand;

(j)     The acts complained of constitute violations of the fiduciary duties owed by Swisher's officers and directors and these acts are incapable of ratification;

(k)     Each of the Individual Defendants authorized and/or permitted the false statements disseminated directly to the public and which were made available and distributed to shareholders, authorized and/or permitted the issuance of various of the false and misleading statements and are principal beneficiaries of the wrongdoing alleged herein, and thus could not fairly and fully prosecute such a suit even if they instituted it;

(l)     Any suit by the Company's current directors to remedy these wrongs would likely expose the Individual Defendants and Swisher to further violations of the securities laws that would result in civil actions being filed against one or more of the Individual Defendants, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves;

(m)     Swisher has been, and will continue to be, exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Swisher any part of the damages Swisher suffered and will suffer thereby; and

(n)     If the current directors were to bring this derivative action against themselves, they would thereby expose their own misconduct, which underlies allegations against them contained in a class action complaint for violations of securities law, which admissions would impair their defense of the class action and greatly increase the probability of their personal liability in the class action, in an amount likely to be in excess of any insurance coverage available to the Individual Defendants. Thus, the Individual Defendants would be forced to take positions contrary to the defenses they will likely assert in the securities class action.

(o)     Moreover, despite the Individual Defendants having knowledge of the claims and causes of action raised by Plaintiff, the current Board has failed and refused to seek to recover for Swisher for any of the wrongdoing alleged by plaintiff herein.

(p)     Plaintiff, moreover, has not made any demand on shareholders of Swisher to institute this action since demand would be a futile and useless act for the following reasons:

1.     Swisher is a publicly held company with over 173.98 million shares outstanding, and thousands of shareholders;

2.     Making demand on such a number of shareholders would be impossible for Plaintiff who has no way of finding out the names, addresses of phone numbers of shareholders; and

3.     Making demand on all shareholders would force plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

(q)     Furthermore, the conduct complained of herein could not have been the product of good faith business judgment, and each of these directors faces a substantial likelihood of liability for breaching their fiduciary duties because, through their intentional misconduct, they have subjected Swisher to substantial damages. Furthermore, the conduct of the Individual Defendants has subjected the Company to potential liability in connection with a securities fraud class action entitled *James v. Swisher Hygiene, Inc., et al, cause number 1:12-cv-02406,* pending in the United States District Court for the Southern District of New York. Through their intentional misconduct, Individual Defendants have subjected the Company to potential costs, fines, and judgments associated with the securities class action. Such actions by the Individual Defendants cannot be protected by the business judgment rule. Accordingly, making a pre-suit demand on the Individual Defendants would be futile.

47.     Based on the foregoing, Plaintiff brings the following claims.

## COUNT I
## <u>(AGAINST THE INDIVIDUAL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY)</u>

48.     Plaintiff incorporates by reference each of the preceding paragraphs as though they were set forth in full herein.

49.     Defendants owed a fiduciary duty to Swisher to supervise the issuance of the Company's press releases and public filings to ensure that they were truthful and accurate and they such filings conformed to applicable securities laws. Defendants, however, breached their fiduciary duties by failing to properly supervise and monitor the adequacy of Swisher's internal controls and by allowing the Company to issue and disseminate misleading statements and filings.

50.     Defendants have engaged in a sustained and systematic failure to exercise their oversight responsibilities and to ensure that Swisher complied with applicable laws, rules and regulations.

51.     As members of the Swisher Board, the Individual Defendants were directly responsible for authorizing, permitting the authorization of, or failing to monitor the practices that resulted in violations of applicable laws as alleged herein. Each of them had knowledge of and actively participated in, approved, and/or acquiesced in the wrongdoing alleged herein or abdicated his or her responsibilities with respect to this wrongdoing. The alleged acts of wrongdoing have subjected the Company to unreasonable risks of loss and expenses.

52.     Each of defendants' acts in causing or permitting the Company to disseminate material misrepresentations and omissions to the investing public and abdicating his or her oversight responsibilities to the Company have subjected the Company to liability for violations of applicable laws, and therefore were not the product of a valid exercise of business judgment,

constituting a complete abdication of their duties as officers and/or directors of the Company. As a result of defendants' breaches, Swisher is the subject of a major securities fraud class action lawsuit by defrauded investors, and the Company's reputation in the business community and financial markets has been irreparably tarnished.

## COUNT II
## (AGAINST THE INDIVIDUAL DEFENDANTS FOR GROSS MISMANGEMENT)

53. Plaintiff incorporates by reference each of the preceding paragraphs as though they were set forth in full herein.

54. Defendants had a duty to Swisher and its shareholders to prudently supervise, manage, and control the operations, business, and internal financial accounting and disclosures of the Company. Defendants, however, by their actions and by engaging in the wrongdoing alleged herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the business of Swisher in a manner consistent with the duties imposed upon them by law. By committing the misconduct alleged herein, defendants breached their duties of due care, diligence, and candor in the management and administration of Swisher's affairs and in the use and preservation of the Company's assets.

55. During the course of the discharge of their duties, defendants were aware of the unreasonable risks and losses associated with their misconduct. Nevertheless, defendants caused Swisher to engage in the scheme described herein which they knew had an unreasonable risk of damage to the Company, thus breaching their duties to the Company. As a result, defendants grossly mismanaged Swisher, thereby causing damage to the Company.

## COUNT III
## (AGAINST THE INDIVIDUAL DEFENDANTS FOR CONTRIBUTION AND INDEMIFICATION)

56.     Plaintiff incorporates by reference each of the preceding paragraphs as though they were set forth in full herein.

57.     Swisher is alleged to be liable to various persons, entities and/or classes by virtue of the facts alleged herein that give rise to defendants' liability to the Company.

58.     Swisher's alleged liability on account of the wrongful acts, practices, and related misconduct alleged arises, in whole or in part, from the knowing, reckless, disloyal and/or bad faith acts or omissions of defendants, and the Company is entitled to contribution and indemnification from each defendant in connection with all such claims that have been, are, or may in the future be asserted against Swisher, by virtue of the Individual Defendants' misconduct.

## COUNT IV
### (AGAINST THE INDIVIDUAL DEFENDANTS FOR ABUSE OF CONTROL)

59.     Plaintiff incorporates by reference each of the preceding paragraphs as though they were set forth in full herein.

60.     The Individual Defendants' conduct, as alleged herein, constituted an abuse of their control over Swisher.

61.     As a direct and proximate result of the Individual Defendants' abuse of control, the Company has suffered, and will continue to suffer, damages for which the Individual Defendants are liable. Plaintiff, moreover, has no adequate remedy at law.

## COUNT V
### (AGAINST THE INDIVIDUAL DEFENDANTS FOR
### WASTE OF CORPORATE ASSETS)

62.     Plaintiff incorporates by reference each of the preceding paragraphs as though they were set forth in full herein.

30

63. The Individual Defendants' conduct, as alleged herein, constituted a waste of the corporate assets of Swisher.

64. As a direct and proximate result of the Individual Defendants' abuse of control, the Company has suffered, and will continue to suffer, damages for which the Individual Defendants are liable. Plaintiff, moreover, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

i. Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties;

ii. Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

iii. Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: New York, NY
      May 21, 2012

**BROWER PIVEN**
  A Professional Corporation


By: _____
Daniel I. Wolf
Brian C. Kerr
488 Madison Avenue, 8th Floor
New York, New York 10022
Telephone: (212) 501-9000
Facsimile: (212) 501-0300

Patrick W. Powers
State Bar Card No. 24013351
patrick@powerstaylor.com
Peyton J. Healey
State Bar Card No. 24035918
peyton@powerstaylor.com

31

POWERS TAYLOR LLP
8150 North Central Expressway
Suite 1575
Dallas Texas 75206
Telephone: 214-239-8900
Facsimile: 214-239-8901

THE BRISCOE LAW FIRM, PLLC
WILLIE C. BRISCOE
The Preston Commons
8117 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 706-9314
Facsimile: (214) 706-9315

ATTORNEYS FOR PLAINTIFF

32

## VERIFICATION

I, CLARENCE ARSENAULT, hereby verify and declare that I am and was at all relevant times a shareholder of Swisher Hygiene, Inc. I further verify that I have reviewed the Shareholder Derivative Complaint ("Complaint") in this action. The allegations contained within the Complaint are true and correct to the best of my knowledge, information, and belief, and I have authorized the filing of this Complaint.

I declare under penalty of perjury that the foregoing is true and correct.

DATED:        May 10, 2012                    By: _Clarence Arsenault_
                                              Clarence Arsenault